whiting. States court of appeals for the ninth circuit case of paper. Get put up there. Thanks I'll just be a moment. For the lower Katie. Can't have a block in my view. Okay. I'm just fooled. And. I'm pleased to say today. With my colleague judge Hawkins. Who is a P. who was on the video. And. With judge Rakoff. Who's a visiting judge. Helping us with their docket. Both judge Hawkins and I. Thank judge Hawkins. For. Spending some time with us. Instead of on his docket. We only. Have one case to be argued today. And that's. He told. That I'm gonna note. But that they should. Be put on the docket. I'm going to note for the record. The names and numbers of the. This is submitted on the briefs. We have christened. Yeah, yeah, I've been ventura. The garland. Number 16. 7 0 2 9 3. And 17 7 0. 7 0 9 submitted on briefs. We have franklin. Beatty. Take a. Number 16. 7 7 0 3. 7 0 submitted on briefs. We have. The number 17. 7 0 2 9 3. We have. Robles U.S. Robles Martinez V. Garland. Number 17. 7 2 7 9. Submitted on briefs. We have. Martin. Martin. I know. Cipriano. The. The garland. The thing that goes. Number 17. 7 0 3 6 9. Submitted on briefs. We have Kennedy versus. Kajikazi. Number 30 21. 3 5. 3 5. 5 7 6. Submitted on briefs. We have newsome. Versus Kajikazi. Number 21. 3 5 7 2 0. Submitted on briefs. And we have. Jenny Tech. Versus Red Com. Number. 21 3 5. 9 6 7. Submitted on briefs. So. So clearly this is a court of object submission. That's correct. The. Fact is, we're very happy to be able to hear argument on the. On the Valencia Gutierrez v. V. Garland case. And we want to tell. Note to council. That we're glad you're here with us. We'll proceed with the argument. That case, wait. Katie. Took the day sheet away. I need to see the day sheet. Yes. Thank you, your honor. This other. Wait a minute. I was just gonna say. That case is. Set for 10 minutes per side. So please try to. Stay within your time. If you're able to do so. So we have. Petitioners first. And by video, it's. Mr. Jada customer. Customer off. I'm. Not seeing that right. And please correct me if I've got it wrong. That's that's fine, your honor. Thank you. Please proceed. Yes, may it please the court. This is Adolfo Jada representing their petitioner, Teodoro Valencia Gutierrez. If I could kindly reserve last two minutes for rebuttal. And I wanted to, as directed by the court, focus on the case that I was directed to the case of Jose Sosompa Alizar. And I guess compare contrast to our case. I believe the difference in that case. I'm sorry, did somebody have a question? Okay, I'll continue. I would say that the difference in that case compared to Mr. Teodoro is that Jose Sopancli, I think had one of the things he had proven was the fact that he had suffered violence while living on the border of Tijuana. Whereas I know a big issue for relocation with him was that his family, the majority of his family lived in Tlaxcala, which is about 1,500 miles away, in what I believe is relatively considered a safe state by Mexican standards. So I know that was an issue. I know that the panel in that court also held that because they were looking at cat relief, conventional torture relief as being kind of a future looking forward in that remedy. And in that case, I think they determined because although he had been kidnapped in the past, there was no guarantee that he would be kidnapped again. And that he would be that he could easily return to where most of his family was in Tlaxcala where he was not having those problems. I want to confess that with my client who is from the state of Michoacan, considered one of the most dangerous states in Mexico, especially the part of Mexico where he's from. He's lived nowhere else in Mexico. He's got no education. He's got he's illiterate. He's a bright person. But what he does is he farms and he's good at it. So he would his only option and where that some of his brothers do still live in the same location where he lived before he would like to return there. Sorry. No, you're fine. Go ahead. Okay. And so that's where I believe there's a difference that Michoacan is, as I said, the State Department currently bans US government employees from visiting the state. There's the most the highest travel advisory to travel there for US citizens, specifically to the area where he's from, which is kind of towards the coast. Counselor, if I may interject a question, to cut to the chase on an issue of importance to me, on your asylum and withholding claims, which were denied, my understanding was that there was a determination that your client had committed a particularly serious crime. And then that if that's so, that would disqualify him from asylum and withholding, although he could still advance his cat claim. Yes, and I apologize. I don't really have an argument in that. And so I guess I'm arguing for his cat claim, Your Honor. Well, before you give up on that point, I didn't see in the briefs from either side, any reference to this court's decision in Sandoval v. Sessions, 866 F. 3rd. 986, which was filed in August of 2017, after most of the events in this case. And in that case, the Ninth Circuit held that the conviction under the very Oregon statute that we're concerned with here did not qualify as an aggravated felony. So I certainly want to hear from the government on that. But isn't that actually dispositive in your favor on that issue? Well, yes, Your Honor, based on that analysis, I would argue that then my client's case would not be a particularly serious crime and he would be eligible for withholding, which I think he has proven that there was state actors that were the ones that were the ones that counsel didn't pick up on this is that Oregon frequently changes the numbering of its statutes. But if you look at the actual specific charge in this case, and the words of the statute under which it was charged, and the statute that is involved in Sandoval, they are the same statute. It's just that it was renumbered later on, which is why maybe you didn't pick up on it. Yes, and my apologies, Your Honor, but I thank you for bringing it up. And so then that would lower the petitioner's burden. And I think he has he had satisfied the prong for withholding of removal, such as that he was being persecuted by members that had been deputized by the government, and then his refusal to participate in their to participate in their activities with him with them. Excuse me, wait a second, Stacey. I don't see the clock running here. We can see it. I can see it. It's at about 330. Okay. Okay. That's fine. I couldn't see it from here. Go ahead. Thank you, Your Honor. I don't think I have anything else to say. I just wanted to, like I said, I believe it's clear that he was being persecuted by quasi government actors. I know many of the people coming from this region are just concerned with the drug leaders and so on. He was actually persecuted by a quasi military that at the time was deputized by the state of Michoacan. What was the particular social group that you say he was a member of? I would say that he is a member who refuses to participate in government militias to patrol against drug traffickers. That's a particular social group? Well, yes, because they could have just said, thank you, sir. Thanks. But instead of leaving him alone, they got mad at him and persecuted him for not willing to participate because then they were almost imputing his political opinion, thinking that because he did not want to patrol against the drug traffickers, that maybe he was for the drug. Councilor, I thought that there was precedent saying that a particular social group could not be defined by reference to the harm that an individual suffers. I apologize. I didn't catch the first part of that. I thought that there was circuit precedent saying that a particular social group could not be defined with reference to the specific harm that a petitioner had, that the group had to be distinct and recognized as such in the community. I respect that. Obviously, Your Honor, that's precedence. But I think in this case, it was a group that was clearly identified. And they chose to do him harm when he refused to cooperate with them. Excuse me, Councilor, has that particular social group been recognized in any of our opinions? No, Your Honor. And I have followed it closely because I've been a member of the community for a long time. And because it is unique, like I said, most of the cases, they're just, it's kind of a combination between drug dealers, mistreating people, people refusing them. But in this case, I think it's an argument or a strong argument that they were deputized by the government at the point that my client was being recruited and then harassed for refusing to participate. I consider that they were a state actor. And that is my argument. Thank you. I had to say, sorry, go ahead. I was gonna say, you don't have a lot of time, but we'll give you two minutes for rebuttal. Thank you. Then we can hear from the government now. Ms. Glazer, please. Good morning, Your Honors. May it please the court. Sherry Glazer appearing on the United States Attorney General. To start off with, I'm happy to address the Kat case, but a few points that the proposed social group that was just mentioned is actually not the group that was proposed to the immigration judge. It specifically was farm owners and citizens of rural Michoacan who are opposed to the rural forces and are being persecuted for it. And the immigration judge found that it was not in fact legally cognizable, because it was circularly defined by the persecution that its claim members claim to be suffering. It lacked particularity, and it lacked social distinction, all of which were not challenged in petitioners opening brief whatsoever. In fact, he didn't challenge any aspect of the immigration judges, assuming he was not convicted of a particularly serious crime. He didn't challenge any of the bases on which the immigration judge denied his application for asylum or withholding of removal. On that basis, on the basis that he didn't suffer any harm rising to the level of persecution, that this court has long held that for failing to join a group that does not constitute a political opinion, and really overall his past and feared future harm is all based on criminal violence, which this court has long held there's no nexus whatsoever to any protected ground. So I would ask that you know, even if this court, with the Sandoval case that was mentioned, even if this court is unsatisfied with the particularly serious crime analysis in this case, that it doesn't matter because the immigration judge went a step further and said even if he wasn't convicted of a particularly serious crime, he failed to show eligibility for asylum and withholding of removal on the merits, and he didn't challenge any of those bases in his opening brief. So the immigration judge's point on that is dispositive. And with regards to Somponsi-Salazar, the government respectfully disagrees with Mr. Valencia regarding the relocation issue, because this is a unique case and he doesn't fear a particular group that operates throughout the country of Mexico. So he did say when he was asked whether it was possible for him to live in another area, this is on 116, where he would be safer, the only response he gave was he didn't know any other place. And when we look to the analysis in Somponsi-Salazar, this court held that convenience, reasonableness, and comfort doesn't enter the analysis in a CAT claim. That all it is is whether evidence shows it would be possible for the individual to relocate somewhere where he or she would be safe. And we have that here. You know, he fears these auto defense groups, but when we look at the record and when we look at his testimony, the record shows that they don't operate throughout the country of Mexico. He explicitly testified on 113 that he feared this group would kill him or his brothers only if they ever returned to their hometown, not if they returned to the country of Mexico. And if we look at the rest of his testimony and a declaration from his brothers, that declaration's on 153 to 155, it only discusses these groups operating in the Michoacan region. And the same is true of the articles that are in the record. That's 164 to 79. They only discuss these groups in this one particular, in the State Department report on 211. It has a paragraph on these auto defense groups, and it says these groups, quote, were concentrated in the southwest states of Michoacan and Guerrero and emerged most frequently in small towns without a local police force or significant and without a local police force and that have significant crime problems. Mexico is it's a country of 32 states, and the entire record shows that these groups just operate in two of the 30 states where it appears he could safely relocate. So that, in fact, undercuts his claim that he's eligible for CAT on top of the acquiescence issue, which we breached in the answering brief that, you know, there's looking at the articles again, 165 to 79, it describes efforts by the Mexican government to recruit and train these new forces to combat the criminality of these auto defense groups, and that surely undercuts any claim that public officials and the government, the Mexican government overall, is aware of any torture and just stands by and consents to it, acquiesces to it, or remains willfully blind. That undercuts any such claim on top of... I'm sorry, was there a question? No, but since you thought there was, I'll pose one. So I understand that you say it doesn't matter whether it was a particularly serious crime or not, and obviously we agree with you on that, that's that, but assuming we don't agree, I was a little surprised that the government was apparently unaware of the I had heard of the case after I briefed, after I briefed the case, but I didn't do anything about it, your honor, because he, there's no challenge whatsoever in the opening brief that his conviction was not a drug trafficking offense. So in the government's view, he wholly waived the opportunity to challenge that. Is it purely a that this is not a particularly serious crime, and the, and the government becomes aware of that. Yes, you're totally right. He totally blew it. He didn't raise it, but nevertheless, that was a determination that had been made before Sandoval by the immigration courts, and so why isn't it plainer? You know, looking back, it probably was, but sort of the second reason why I, I didn't feel it was necessary to bring anything up to the court was that if the immigration judge hadn't taken it a step further and hadn't said, okay, assuming he was not convicted of a particularly serious crime and he was eligible to seek asylum and withholding of removal, you know, he failed to show eligibility on the merits. If the immigration judge hadn't gone that step further, this case would be completely different, and it absolutely would have changed the, I don't want to, I'm trying to think of the right word, not framework of how I would have addressed this case, but I would have brought that up because that would have, that would have been a reason to remand because that would have been the only issue before a court on a particularly serious crime, but because the IJ went a step further and because he didn't challenge anything regarding asylum or withholding of removal on the merits, that's sort of a second reason why it's, it's, it's not relevant to this case at all. Yeah, but that doesn't relieve you, counsel, of the obligation to bring to the court's attention an important decision that directly affects the merits of the case. It would be perfectly appropriate for you and your briefs to have cited Sandoval. I take it it was in existence at the time you wrote the briefs, right? Your brief? I'll have to go back and look. I wasn't aware of it when I wrote the brief. It was preparing for the argument. I looked into the issue. And irrespective of whether it was available when you wrote your brief, you had an obligation under our 28J rule to bring it to the court's attention. One of the reasons that lawyers hold the license that they do and the respect that they're due is that they're, they can judge themselves. They can police themselves. And although he may well have waived this argument, bore directly on the first prong of the agency's holding with respect to the availability of withholding an asylum. So I think he missed the mark. I apologize. I do apologize. Like I said, my thinking was he waived the issue. So it wasn't before the court. And in the end, because the immigration judge went a step further, I didn't think it was as relevant. But I see what you're saying. And I apologize. You could have easily written a brief by saying that the intervening authority of Sandoval requires the government not to rely upon that ground. But fortunately, the immigration judge went a step further and relied upon the social group thing. So there's a way to be an effective advocate and to be an honest advocate. I understand. Like I said, I wasn't aware of the case when I briefed it. But yes, I could have filed a 28J and I apologize for that. I do. I'm not sure I have anything else other than the arguments made today and the arguments made on made in the brief on asylum and withholding of removal and the cat claim unless your honors have additional questions. Yeah, I have no questions to break up. We're not hearing any other questions. So I'm going to return to the petitioner's argument for rebuttal. And we've made the clock two minutes instead of 19 seconds. So we can get the full benefit of petitioner's hearing. Your honor, thank you. I just wanted to go back to the case that I was asked to look at in Sasson-Pontly-Salazar. I believe, I understand the government's position that it's only two states where these people, where these deputized military groups operate. But my client is not similar to Jose Sasson-Pontly-Salazar in that his only existence in Mexico being uneducated, having no marketable profession other than farming. And he, it's his every intention because he, he was fortunate that his family left, his father left enough land for his for his brothers to work. And to him, that's all he's known. That's all he's ever done because he doesn't read, he doesn't write, he doesn't have any other skills besides that. So I think it's reasonable that that's where he would want to go home. Obviously, it's he's doing it at his own risk, but he's not sophisticated enough to take his trade elsewhere other than be a farm worker, whereas his home state, he would actually be a farm worker slash landowner. That's all I have, unless you have any questions for me, your honors. No questions. With that, this case shall now be submitted. And the parties will hear from us in due course. Thank you for your arguments. Thank you, your honors. Thank you, Ms. Glazer. And the court will adjourn for the day.
judges: HAWKINS, GOULD, Rakoff